BOWLING GREEN TRUST CO. v. VIRGINIA PASSENGER & POWER CO. JOHN A. ROEBLING'S SONS CO. v. SAME. CENTRAL TRUST CO. v. SAME.

(Circuit Court, E. D. Virginia. October 8, 1904.)

**1. RAILROADS—SUIT TO FORECLOSE MORTGAGE—INTERVENTION BY INDIVIDUAL BONDHOLDERS.**

It is a well-settled doctrine in the federal courts that, where the fitness of the trustee in a railroad mortgage to represent the interests of the bondholders is not questioned, nor its conduct in efficiently, honestly, and impartially discharging its duty assailed, individual bondholders are neither necessary nor proper parties to a suit to foreclose the mortgage, and that they will not be permitted to intervene therein.

**2. SAME—LEGALITY OF SUBSTITUTION OF TRUSTEE.**

Where a railroad mortgage makes provision for a change of trustee, and a change has been made in apparent conformity to such provision, its legality cannot be collaterally determined on the application of individual bondholders to be permitted to intervene in a suit to foreclose the mortgage instituted by the substituted trustee.

**8. SAME—OBJECTION TO FITNESS OF TRUSTEE.**

Individual holders of a small minority of the bonds of a railroad company will not be given leave to intervene in a suit to foreclose the mortgage, to the displacement of the trustee who has instituted the suit on request of a majority of the bondholders, where no fraud or misconduct on the part of the trustee is charged, and the only objection to it is that it is unsuitable to conduct the suit because of the fact that certain of its directors are also bondholders and stockholders of the defendant, the court having ample power to hear them as parties in interest, although not formal parties, as to any action taken by the trustee prejudicial to their rights.

**4. SAME.**

A court should in any case be slow to interfere with a mortgage trustee in foreclosing the mortgage, in the apparently lawful discharge of its duty, at the instance of a comparatively small number of minority bondholders, and least of all should it do so when it appears that such bondholders are not themselves seeking actual relief, but are attempting to obstruct the trustee in the discharge of what it deems its duty.

In Equity. Suit to foreclose railroad mortgage. On application by bondholders for leave to intervene.

These causes were instituted in this court in the order named: The first to foreclose a certain consolidated mortgage given by the Virginia Passenger & Power Company on all its property and franchises, including the property of the Richmond Passenger & Power Company and the Richmond Traction Company—in which last-named companies the said Virginia Passenger & Power Company owned a majority of the stock in each—and to have all of said property placed in the hands of receivers of the court, and the same subjected to the payment of its debts and administered under the direction of the court; the second, in behalf of certain supply lien creditors of the Virginia Passenger & Power Company, setting forth the institution of the first cause, and the action taken therein, and asking that said property be subjected to the payment of their liens, receivers appointed, etc.; and the

third, by the trustees in the underlying mortgage given by the Richmond Passenger & Power Company upon its property and franchises, setting forth the institution of the first two suits, and asking the foreclosure of its mortgage, and that the property covered thereby, as well as that of the Virginia Passenger & Power Company, be placed in the hands of receivers, and duly administered therein. Upon the filing of the bill in the first cause on the 15th of July, 1904, a preliminary restraining order was awarded, temporary receivers appointed, and all of the property of the defendant company placed in their hands; and the 1st day of September was designated as the day to show cause against making the said injunction order and appointing said receivers permanent. On this last-named date Louis E. Spencer and Ella K. Perrin, executors of the last will and testament of Nelson Perrin, deceased, and N. Winslow Williams—the first named as stockholder and as bondholder of the Virginia Passenger & Power Company, and the last two as bondholders of the same company—presented their petitions in the two first causes, asking to be admitted as defendants therein; and the order to show cause against making permanent the said injunction and receivers was enlarged and continued, and the filing of said petitions was likewise postponed until October 3d, when the said questions were further considered; and Andrew Pizzini, Jr., John W. Wilbur, and William A. Washburn, other bondholders of the said Virginia Passenger & Power Company, also filed similar petitions in the first-named cause.

Goodwin, Thompson & Vanderpoel and Munford, Hunton, Williams & Anderson, for Bowling Green Trust Company.

Munford, Hunton, Williams & Anderson and Christian & Christian, for John A. Roebling's Sons Company.

Butler, Nottman, Joline & Mynderse and Leake & Carter, for Central Trust Company.

Davis & Davis, Alexander Hamilton, William B. McIlwaine, and L. L. Lewis, for petitioners.

Miles M. Martin, for the defendant companies.

WADDILL, District Judge (after stating the facts). The question presented for the consideration of the court is whether the petitioners, individual stockholders and bondholders of the defendant, the Virginia Passenger & Power Company, under the facts and circumstances of this case, should be allowed as such to intervene in these proceedings and be made parties defendant thereto.

The general rule in judicial proceedings, that all persons interested in a controversy should be made parties thereto in order that their rights may be determined and concluded, is conceded. That there are exceptions, however, to this proposition, is equally clear, and particularly is this true in proceedings in the federal courts in foreclosure suits, and suits for the administration of trust estates. There it is the well-settled doctrine—too well established to need elaboration—that the trustee in the mortgage or trust deed, or other instrument creating a trust estate, speaks and acts for the cestuis qui trust, and that the latter are neither necessary nor proper parties, where the fitness of the particular trustee, or his conduct as such in failing to efficiently, honestly, or impartially discharge his duties, is not brought in question. This is a rule largely the result of convenience, and in order to facilitate the proper conduct of litigation. To admit each individual bondholder or stockholder of a corporation to appear of his own motion, and proceed to assert his rights as he may be advised, when the same can be as well asserted through the trustee, will not be tolerated. Indeed, it has become the

settled practice, in mortgages of the character under consideration here, to provide in terms that the trustee shall, and the individual stockholder and bondholder shall not, assert this right; and this is one of the provisions of the mortgage in this case. The circumstances under which individual stockholders or bondholders can themselves appear and act in their own behalf has frequently been the subject of review in the courts of last resort, state and federal, in this country, and there is perhaps no branch of the law more definitely determined. Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Dimpfel v. Ohio & M. Ry. Co., 110 U. S. 209, 3 Sup. Ct. 573, 28 L. Ed. 121; Equity Rule 94; Clark on Corporations, p. 398. In this case, the petitioning stockholder does not make a single averment entitling him, as such, to interpose in his own behalf. The petitioners' claim to interpose as individual bondholders is based, not upon any attack upon the complainant trustee in the mortgage under which they are secured, for any malfeasance or misfeasance on its part of which it has thus far been guilty, but is directed first to the matter of the selection of the trustee, it, the Bowling Green Trust Company, having been substituted in the place of the Merchants' Trust Company of New York; and, second, to the unsuitability of the said Bowling Green Trust Company to act as trustee by reason of the relation of certain bondholders and stockholders of the defendant, the Virginia Passenger & Power Company, with the said Bowling Green Trust Company. Briefly, the charges are that the change of trustee was not lawfully made, in that some of the parties voting the bonds secured in the mortgage of the Virginia Passenger & Power Company, in making the change of trustee, were without authority so to do; and that the Bowling Green Trust Company is disqualified to act as trustee, because Frank J. Gould and his sister, Miss Helen Miller Gould, are the owners, or claim to be such, of a majority of the stock of the Virginia Passenger & Power Company, and that a brother of the said Frank J. Gould and Helen Miller Gould is the president of the said Bowling Green Trust Company, and that the said Frank J. Gould and another brother are among its board of directors, and that therefore, so far as the affairs of the Virginia Passenger & Power Company are concerned, the said Frank J. Gould dominates and controls the said Bowling Green Trust Company to such an extent that it would be useless for the petitioners, bondholders of the Virginia Passenger & Power Company, secured in the mortgage in which the Bowling Green Trust Company has been substituted as trustee, to ask said trustee to take any steps, to pursue any course, or adopt any policy prejudicial to the interests of the Goulds.

As to the first question, the court cannot see its way clear at this stage, and in this purely collateral manner, to inquire into the legality of the substitution of the trustee. The mortgage makes provision for the change, and since the same appears to have been made in due conformity therewith several months before, and apparently without relation to this suit, presumably such a change was regularly made; and the court should not, at the mere instance of a bondholder seeking to be admitted a party to a foreclosure proceeding instituted by such trustee, upon the request, as is claimed, of a majority of the bondholders secured in the mortgage, undertake either to impugn the right of the trustee so

to institute the proceedings, or to question the title to the securities of those appearing to have voted for the same. To do this would be to suspend every foreclosure suit, where a substituted trustee happened to bring the same, whenever an individual bondholder saw fit, before becoming a party to the suit, to make such charge. That the subject can be properly investigated in this or some appropriate proceeding may not be questioned, but certainly not, at this stage of this case, by a party occupying the relation to the trustee in the mortgage that the individual bondholders do. The trustee speaks for the bondholder, and until the bondholder has shown his right to speak for himself, because of the relation or conduct of the trustee to the subject-matter, he cannot in this manner challenge the trustee's title.

Coming to the second proposition, as to the objection to the complainant company as a fit trustee, it will be well to consider for a moment the relation that trustees in railroad mortgages occupy to their cestuis qui trust. In discussing this question, Mr. Chief Justice Waite, speaking for the Supreme Court of the United States in Shaw v. Railroad Co., 100 U. S. 611, 25 L. Ed. 757, said:

"The trustee of the railroad mortgage represents the bondholders in all legal proceedings carried on by him, affecting his trust, to which they are not actual parties, and whatever binds him, if he acts in good faith, binds them."

And, referring to the particular case, he further said:

"The trustees had an undoubted right to commence these suits when they did, and it is apparent from the whole record that all their proceedings, both before and after the sale, were in the interest of their beneficiaries generally, since one hundred and eighty in number, representing in the aggregate eight million out of the eight million five hundred thousand dollars of bonds outstanding, accepted the result and exchanged their bonds for stock in the new corporation. To allow a small minority of bondholders, representing a comparatively insignificant amount of the mortgage debt, in the absence of any pretense even of fraud or unfairness, to defeat the wishes of such an overwhelming majority of those associated with them in the benefits of their common security, would be to ignore entirely the relation which bondholders, secured by a railroad mortgage, bear to each other. Railroad mortgages are a peculiar class of securities. The trustee represents the mortgage, and, in executing his trust, may exercise his own discretion within the scope of his powers. If there are differences of opinion among the bondholders as to what their interests require, it is not improper that he should be governed by the voice of the majority, acting in good faith and without collusion, if what they ask is not inconsistent with the provisions of his trust."

This case aptly states the doctrine as settled by the Supreme Court of the United States in that and previous cases, and has since been followed therein. Kerrison v. Stewart et al., 93 U. S. 155, 160, 23 L. Ed. 843; Richter v. Jerome, 123 U. S. 233, 246, 8 Sup. Ct. 106, 31 L. Ed. 132; 9 Rose's Notes, 877. And perhaps in no other judicial district in the United States is the doctrine more firmly established than in this. Richards v. C. & O. R. Co., 1 Hughes, 28, 34, Fed. Cas. No. 11,771; Skiddy v. A. M. & O. R. Co., 3 Hughes, 320, Fed. Cas. No. 12,922; Clyde v. R. & D. R. Co. (C. C.) 55 Fed. 445. Counsel for the petitioners have specially referred the court, in support of their contention, to the cases of Bronson v. La Crosse R. Co., 69 U. S. 283, 17 L. Ed. 725, and Farmers' Loan & Trust Co. v. Northern Pac. R. Co. (C. C.) 66 Fed. 169.

A careful review of these cases will be found to contain nothing that militates especially against the doctrine herein declared.

In the case at bar, complainants except to the sufficiency of the charge in the bondholders' petition affecting the eligibility of the trustee, and insist that no valid averment of disqualification is made. In this connection it will be borne in mind that the objection relates only to the suitableness of the trustee by reason of its relation to certain bondholders, and not to anything that has been done by the trustee. The fact that a large bondholder in the defendant company happens also to be a director, and two of his brothers likewise directors (one being president), out of a board of 24 constituting the directory of the company, named as trustee, is not of itself sufficient to make ineligible such company to act as trustee, in the absence of some specific averment of misconduct on the part of the trustee; and it will not do, where no complaint is made as to what had been done, but merely of what may be done, to invoke the doctrine of the uselessness of making requests for relief to the trustee. The court, under these circumstances, should look to what the trustee has done of an objectionable character before declaring it to be disqualified, and admitting the individual bondholders on account thereof to appear for themselves. In this case, all that the trustee has done is in accordance with the terms of the mortgage. The mortgagor being in default, the trustee instituted the usual foreclosure proceedings, and asked a court of competent jurisdiction to appoint receivers to take charge of the property and duly administer the same for the benefit of all persons in interest; and such action has been taken, receivers appointed, one of them being a leading member of the bar of the court, and confessedly the most experienced person in the community for such position. This action thus far taken, what and however great the conflict may be between the bondholders themselves, cannot prejudicially affect one to the exclusion of the other, as the receivers so appointed are the hands of the court to act for the benefit of all. Until it is alleged and sufficiently made to appear that the trustee or its counsel has been guilty of some act detrimental or antagonistic to the interest of the petitioners, or until some charge of negligence, fraud, or incompetency is made against the trustee, the court should not be asked to in effect retire the trustee in the mortgage from the conduct of the litigation in hand, and to substitute in its place and stead individual bondholders to conduct such litigation. Parties in interest, quasi, though not actual, parties, can and should always be afforded a hearing as to matters affecting their own rights. They will have the right to go before the master, and establish their claims, and contest those of any other bondholders; can bring to the attention of the court any misconduct or dereliction of duty on the part of the complainant trustee, or others connected with the conduct of the litigation or management of the property under the court's control. And this may be carried to the extent of the removal of an improper, incompetent, and derelict trustee, and the substitution of another in his stead. But none of these things should be done unless charges of unfaithfulness be specifically made and established, or unsuitableness clearly shown. The A. M. & O. R. Co. Case, 3 Hughes, 350, 351, Fed. Cas. No. 12,922; Clyde v. R. & D. R. Co. (C. C.) 55 Fed. 445.

This motion to admit the petitioners as parties is one addressed to the sound discretion of the court, and in disposing of the same the court must take into consideration the facts and circumstances surrounding the case, and at least those shown and set forth in the petition itself, including the object and purpose of the petition as shown by its prayer. When viewed in this light, it appears that sundry minority bondholders and stockholders are involved in litigation amongst themselves, in another court, respecting their rights to certain bonds and stocks of the defendant, the Virginia Passenger & Power Company; that the said suit was instituted prior to the institution of this suit, and that an order has been made therein for the appointment of a receiver subsequent to the time the receivers herein had been appointed, qualified, and taken possession of the property; and that from the said order so appointing said receiver in the other court an appeal was at once taken, and a supersedeas to the same was awarded, and is now effective. The intervening petitioners here are persons apparently friendly to the minority bondholders and stockholders aforesaid, and who are not parties to such suit, and are the holders of 100 shares of preferred stock, and 300 shares of common stock, of the defendant Virginia Passenger & Power Company, out of an issue of $5,000,000 of the former and $10,000,000 of the latter, and 140 bonds, of the par value of $1,000 each, out of a total issue of $15,000,000; and they seek to intervene in this cause, not for the purpose of securing any affirmative relief herein, but for the expressed purpose, as shown by the prayer of their petition, of asking this court to stay its hand, and to suspend operations so far as the conduct of this litigation is concerned, save to preserve, care for, and maintain the property, until the litigation aforesaid can be finally disposed of and determined. When this can be done, and just how much time is desired, is not suggested, and in the nature of things cannot be known. At a glance, it will be seen that the petitioners are seeking to avail themselves of the benefit of the former suit in a way that the parties thereto cannot do. If the suit is suspended as to the parties thereto, surely others not parties cannot avail themselves of the benefits thereof. If the parties are expressly forbidden from acting under the order by the suspension of the same, this court should not at the instance of others, in order pretendedly of affording them a hearing, by indirection give life and vitality to the order thus in abeyance, and which may never be revived. Courts in any case should be slow to interfere with trustees, in the apparently lawful discharge of their duties, at the instance of a comparatively small number of minority bondholders or stockholders, and least of all should it do so when it appears that such bondholders and stockholders are not themselves seeking actual relief, but are attempting to obstruct the trustee in the discharge of what it deems to be its duty.

It follows from what has been said that, in the opinion of the court, the petitioners have not set forth such a case in their petition as entitles them to intervene here, and such right to intervention, and the filing of their petition, is denied.

It having been suggested that William Northrop, one of the receivers heretofore temporarily appointed, is an improper person to be se-

lected by reason of his connection with the property and relation to some of the parties in interest, that matter will be given due consideration by the court before making permanent the appointment of receivers herein.